[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
The plaintiff, a public adjusting firm, seeks to recover from the defendant, owner of a commercial building, for services rendered. The services were performed, according to the plaintiff, pursuant to a contract entered into by the parties on August 22, 1988. The defendant does not question the execution of the contract, but argued at trial that it was "conditional". By "conditional" the defendant means that there was a mutual understanding, not reduced to writing, whereby the plaintiff was to "reform" the insurance policy in question to name the defendant as an insured. If the policy were not reformed, the contract would be void, the defendant claims. This claim appears to have been abandoned in the post trial brief.
The above described transaction came about in this fashion. The defendant leased a portion of the building it owned at 435 Shore Road in Old Lyme to one Gaines. He operated a restaurant on the premises. On July 1, 1988, the leased premises were destroyed in a serious fire and Gaines employed the plaintiff to handle his fire loss. However, Gaines was soon charged and ultimately convicted of arson in connection with the fire. The policy in dispute did not name the defendant as an insured owner, though the lease from this defendant to Gaines required that the owner (defendant) be named as an insured. After learning of this omission, the defendant engaged the plaintiff and entered into the contract in question.
 I.
The plaintiff's fee under the contract is set at 10% of "the amount of the loss when adjusted with the Insurance Companies or otherwise recovered." CT Page 7668
The defendant did not recover under the fire policy because attempts at reforming that policy to add it as an insured were not successful. However, the defendant's suit against the carrier and the insurance agency which wrote the policy resulted in a settlement of $245,000.
The plaintiff claims it is entitled to recover 10% of this sum "otherwise recovered", while the defendant argues it owes the plaintiff nothing since the recovery was not on the fire policy itself.
The language in question is dictated by statute (C.G.S. § 38a-788) and regulation (Regs. Conn. State Agencies § 38a-788-6).
Since the phrase "otherwise recovered" in this context has not been defined by the Insurance Commissioner or interpreted by our courts, it must be construed according to the commonly approved usage of the language. C.G.S. § 1-1(a) and Wrinn v. State,234 Conn. 401, 405 (1995).
And, in interpreting such language, words must be given their plain and ordinary meaning. When that language is plain and unambiguous, we need look no further then the words themselves because we assume the language expresses the legislature's intent.; It is basic that when a statute is clear and unambiguous, there is no room for construction. Mattatuck Museum — Mattatuck HistoricalSoc. v. Admin., 238 Conn. 273, 278 (1996).
The language before us is not complex and lends itself to only one conclusion. The adjuster is to receive "a sum equivalent to 10% of the amount of the loss", in one of two ways, with a pair of phrases, separated by "or" to qualify the meaning.
The first qualifying phrase is "when adjusted with the Insurance Companies." This covers the situation the parties first contemplated with the plaintiff calculating the loss and settling with the carrier.
The second phrase defines the amount of the loss in the alternative as a sum "otherwise recovered." Looking to the dictionary for the plain meaning of the words, "otherwise" is a common word meaning simply "in another way." Webster's Third New International Dictionary. "Recover" means "to collect" or "to obtain in any legal manner in contrast to voluntary payment." CT Page 7669 Black's Law Dictionary (6th ed. 1990). A sum recovered is thus any sum obtained through legal means as recompense for a loss suffered. The phrase "otherwise recovered" means simply to recover for the loss in some other way.
When phrases are joined by "or" either one may be operative. "`Or' indicates that which immediately follows . . . is something different and distinct from its antecedent language." ZoningCommission v. Fairfield Res. Mgmt., Inc., 41 Conn. App. 89, 116
(1996). That is, the amount is determined either when adjusted or
otherwise recovered, and these two terms must define different things by virtue of the use of the disjunctive "or". This is the only "reasonable reading that may be given to this language."Flint v. Universal Machine Co., 238 Conn. 637, 645 (1996). "A statute should be read as a whole and interpreted so as to give effect to all of its provisions." Pintavalle v. Valkanos,216 Conn. 412, 418 (1990). "[W]e presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." (Internal quotation marks omitted.) CHRO v. Trueloveand Maclean, Inc., supra, 238 Conn. 347. "A regulation ought to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void or insignificant." Carruthers v.Vumbacco, 4 Conn. App. 168, 171, (1985).
Reading the whole sentence as the defendant wishes would render superfluous the phrase "otherwise recovered." If the contract were limited to only those sums recovered under a fire insurance policy, there would be no need for the second phrase, because such sums are fully defined by the phrase "when adjusted with the Insurance Companies." To interpret "otherwise recovered" as limited to recovery under a fire insurance policy would duplicate the meaning of the first phrase. The plain meaning of the phrase leaves no room for ambiguity; when read in the context of the whole sentence, the phrase means simply a recovery by some way other than an adjustment with the insurance company. The settlement with the agency would not have occurred had there not been a fire loss. The amount received by the defendant in this settlement was a sum recovered for the loss. And it was recovered "otherwise" than through an adjustment with the Insurance Companies.
This is not to say that the contract contemplates that the adjuster shall receive a percentage of any amount received by the client as a result of the loss. The beginning of the sentence CT Page 7670 defining the adjuster's compensation assigns his portion out of the monies due "from said Insurance Companies." The adjuster would not be able to claim a portion of sums received, for example, from a tortfeasor found liable for the loss. That the adjuster is limited to sharing in the proceeds from an insurance company comports with the intention behind the regulations. As a part of the regulation of the insurance industry, the regulations authorized by General Statutes §§ 38a-769 and 38a-788 regulate the relationship between an insured and those who function, like agents and adjusters, as intermediaries between the insured and the insurance company. To permit the adjuster to share in proceeds derived from non-insurance sources would exceed the bounds of the regulatory authority.
The court concludes that the term "otherwise recovered" in this employment contract leaves no room for ambiguity and its plain meaning includes all sums "received" from an insurance company in recompense for a loss. In this case, the adjuster is due his percentage of the sum "received" by the defendant from its agent's errors and omissions policy and the contribution of the fire insurance carrier, a total of $245,000.
 II.
The court next addresses the question of whether the plaintiff's fee should be computed as 10% of the gross or net recovery of the amount "otherwise recovered".
Caselaw offers little guidance in answering this question. Interpretation based on plain meaning and intent leads us in both directions.
On the one hand, the ten percent is to come from monies due "from said Insurance Companies," which implies the sum that the insurance companies actually pay, in this case $245,000. The contract is addressed to "the Interested Insurance Companies" assigning 10% of all monies due from the insurance company to the adjuster. "Assign: means to "transfer, make over, or set over to another." Webster's Third New International Dictionary. By putting the insurance company on notice of the assignment of 10% of the monies due from the insurance company is, in effect, to assign the 10% from the gross amount, which would be the amount due from the insurance company. In this case, however, there was a post settlement agreement to distribute the proceeds among three parties, the defendant, the former tenant, and the defendant's attorneys. It is unclear what, if any, involvement the insurance CT Page 7671 company had in this agreement, or if any such post-settlement distribution was contemplated by the regulations.
On the other hand, "to recover" means to collect, not to pay. An amount "otherwise recovered" implies that only those sumsactually received by the adjuster's client should be subject to the 10% charge. This interpretation may find support in a related regulation that limits the compensation of a public adjuster to no more than 10% of "the actual or final settlement of a loss covered by the employment contract." Regs., Conn. State Agencies § 38a-788-8. The regulation of the public adjuster business serves to protect the insured party, unknowledgeable in the areas of valuation and insurance, from an overreaching adjuster. Such an intent would be further effectuated by a rule that limits the adjuster's compensation to a share of the amount actually received by the insured party.
It is therefore the conclusion of the court that the plaintiff's fee of 10% should be based on the defendant's net recovery after the deductions, $175,000.
 III.
Though it has found the plaintiff should recover under the contract the court next addresses the plaintiff's claim in quantum meruit, in the event this decision produces subsequent proceedings.
Though it has found the plaintiff should recover under the contract the court next addresses the plaintiff s claim in quantum meruit, in the event this decision produces subsequent proceedings.
The plaintiff's restriction of hours spent on this matter on behalf of the defendant support a recovery well in excess of the fee allowed by the contract. And, the court notes that the defendant's potential recovery in its suit against the agent was limited by two factors reflecting errors by the defendant:
 1. The lease language which obligated the tenant to carry only $250,000 worth of insurance; and
 2. The defendant's failure to examine the policy to determine if it were a named insured.
The plaintiff performed his services and prepared a proof of less, signed by this defendant, in an amount in excess of the CT Page 7672 policy limits of $425,000.
CONCLUSION
Judgment may enter for the plaintiff to recover of the defendant the sum of $17,500 plus taxable costs.
Anthony V. DeMayo Judge Trial Referee